Matthew SIMON, Plaintiff,

v.

SAFELITE GLASS CORP., Defendant.

No. CV–94–1856.

United States District Court,
E.D. New York.

Oct. 28, 1996.

Joel Field, New York City, for plaintiff.

Peter Stergios, Michelle Lewis Ramirez, Epstein, Becker & Green, New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, Senior District Judge:

On April 20, 1994, plaintiff Matthew Simon ("Simon") brought an action against defendant Safelite Glass Corporation ("Safelite") alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), and the New York State Human Rights Law, N.Y.Exec.Law §§ 290 *et seq.* ("NYSHRL"). On February 5, 1996, the Court denied defendant's motion for summary judgment.

On February 12, 1996, the date scheduled for trial, Safelite informed the Court it had recently learned that Simon had failed to disclose his successful February 1994 application to the Social Security Administration ("SSA") for Disability Insurance Benefits ("disability benefits") during discovery. The Court ordered further discovery as to plaintiff's application for disability benefits, and granted defendant leave to renew its motion for summary judgment. February 12, 1996 Trial Transcript, at pp. 8–9. Safelite's renewed motion for summary judgment is now before the Court. Also before the Court is Safelite's motion for sanctions pursuant to Rule 11, Fed.R.Civ.P.

## FACTS

On May 1, 1993, plaintiff Simon lost his position as an auto glass installer at defendant Safelite when it closed the Bay Street branch office where Simon had been employed. On February 14, 1994, when his entitlement to unemployment benefits expired, Simon applied for Federal Disability Insurance. Ramirez Aff. ¶ 4; Ex. C, p. 12.; Pl. 3(g) Statement, ¶ 12. As a part of the application process, Simon met with a Social Security representative who interviewed him and transcribed his answers onto a Disability Report. In response to a question concerning changes in Simon's work circumstances, the representative wrote on Simon's behalf, "stayed out on sick leave at times—was finally laid off—reduction in force." In response to the question, "explain how your condition now keeps you from working," the representative wrote, "I was laid off in 3/93 but I have not been able to do any additional work because my vision is getting worse. I have blurriness—not painful but is annoying. I cannot see to do any detail work." Simon also signed an Application for Disability Insurance Benefits, attesting, among other things, to the following:

> "I became unable to work *because of my disabling condition on March 31, 1993. I am still disabled....* I agree to notify the Social Security Administration if: — My medical condition improves so that I would be able to work, even though I have not yet returned to work. —I go to work whether as an employee or a self-employed person."

Pl. Rule 3(g) para. 13. Simon Aff. Ex. H (emphasis added).

Simon's signature on the Application for Disability Insurance Benefits appears under the following paragraph:

> I know that anyone who makes or causes to be made a false statement or representation of material fact in an application or for use in determining a right to payment under the Social Security Act commits a crime punishable under Federal Law by fine, imprisonment or both. I affirm that all information I have given in connection with this claim is true.[1]

On March 25, 1994, a doctor appointed by the SSA examined Simon and confirmed that Simon suffered from a degenerative eye disease. Simon Aff. Ex. F. On April 13, 1994, a vocational consultant from the New York

---

1. See, in this regard, 28 U.S.C. § 1746.

State Department of Social Services Office of Disability Determination reviewed Simon's medical records, application for disability benefits and disability report and concluded that a finding of disability was in order. Simon Aff. Ex. J.

On April 20, 1994, Simon filed this action alleging that Safelite fired and refused to rehire him because of his age. The complaint stated:

> Plaintiff, at all times during his employment, satisfactorily performed all of his duties and responsibilities as an installer and in particular upon information and belief was one of the most productive installers defendant employed in the Metropolitan New York City area.... Upon information and belief defendant had and continues to have a distinct policy that limits employment opportunities for older individuals as installers and a further policy to fill vacancies for *positions that plaintiff is fully qualified to fill* with younger individuals than the plaintiff.

Stergios Aff., Ex. 1, Complaint, ¶¶ 7 & 15 (emphasis added).

On April 23, 1994, three days after Simon filed his employment discrimination case, the SSA concluded its examination of Simon's disability application and issued a Notice of Award of Disability Insurance ("notice"). The notice stated:

> We found that you became disabled under our rules on March 31, 1993.... You will receive $5,230.00 around April 28, 1994.... After that you will receive $757.00 each month.... The decisions we made on your claim are based on information you gave us. If this information changes, it could affect your benefits. For this reason, it is important that you report the changes to us right away.

Simon Aff. Ex. I.

Simon admits that "around the end of April, I was informed that I was eligible for benefits ... which I have been and continue to receive." Simon Aff. ¶ 22.

Simon states that he has worked occasionally installing auto glass since his termination from Safelite. Ramirez Aff. Ex. C, Deposition of Matthew Simon, pp. 65, 70–71; Sterg-ios 2/5/96 Aff.Ex. 10, 4/19/95 Deposition of Matthew Simon, pp. 30–32. However, despite the instructions in the notice and in the Application for Disability Insurance Benefits which he signed, Simon has not informed the SSA of any change in his medical condition or that he has occasionally returned to work.

## *DISCUSSION*

### I.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### A. *Summary judgment standards*

Summary judgment under Rule 56 is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party bears the burden of proof on a motion for summary judgment. *United States v. All Funds,* 832 F.Supp. 542, 550–51 (E.D.N.Y.1993). This burden may be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a jury could return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The nonmoving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

## B. *Proving age discrimination under the ADEA and the NYSHRL*

■ The ADEA prohibits employers from discriminating against workers aged 40 or older on the basis of their age. To survive a motion for summary judgment [in an ADEA cause of action], the plaintiff must first establish a prima facie case of discrimination by showing that he or she (1) is a member of a protected group; (2) was qualified to perform the duties required by the position; and (3) suffered an adverse employment action "under circumstances suggesting that age was a factor." *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 508 (2d Cir.1994) (quoting *Levin v. Analysis & Tech., Inc.,* 960 F.2d 314, 316 (2d Cir.1992)). If the plaintiff can successfully establish a prima facie case, the burden of proof "shifts to the defendant to articulate a 'clear and reasonably specific,' non-discriminatory, business rationale for the employment action." *Robinson,* 21 F.3d at 508 (quoting *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991)). If the defendant articulates such a rationale, the burden returns again to the plaintiff who "must then raise a material issue of fact as to whether the asserted non-discriminatory reason is mere pretext for illegal age discrimination." *Id.*

■ New York State courts have applied a similar burden shifting analysis to cases brought under the NYSHRL. To prevail under that law, as under the ADEA, Simon must prove he "satisfactorily performed the duties required" by his position at Safelite. *Song v. Ives Lab., Inc.,* 957 F.2d 1041, 1045–46 (2d Cir.1992).

Safelite contends that Simon is judicially estopped from claiming that he is capable of performing the work from which he was terminated by his representations to the contrary in support of his application for disability benefits, which was granted, and by his subsequent and continuing acceptance of those benefits. That estoppel precludes Simon from establishing a prima facie case and compels, without more, granting the defendant's motion.

## C. *Judicial Estoppel*

The United States Court of Appeals for the Second Circuit has had few occasions to consider in meaningful detail the doctrine of judicial estoppel. Research has disclosed only one in which it did, namely *Bates v. Long Island R.R. Co.,* 997 F.2d 1028 (2d Cir.), *cert. denied,* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993). Bates and nine other former employees of the defendant brought suit under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, claiming that the defendant wrongfully terminated them on the basis of their respective disabilities after failing to reasonably accommodate them. The only discussion in that case which is relevant to the issue here pertains to one Malachy Lyons, Jr. who was injured on the job and instituted a FELA action against the railroad. At that trial, his treating physician testified that he was permanently disabled from physical labor which was an essential function of his job as foreman. The case was settled prior to verdict. Lyons was subsequently administratively discharged by the railroad on the ground that he was physically disqualified from performing his former job. Lyons then filed this action claiming that the railroad discriminated against him because of his disability. In support of his claim he submitted an affidavit by his treating physician which contradicted his (the physician's) FELA trial testimony. The district court dismissed Lyons' claim under the doctrine of judicial estoppel, holding that he could not take a position in his latest action which was inconsistent with his position in his previous FELA action. Lyons appealed and the circuit court defined the issue on appeal to be whether his claim was properly dismissed under the doctrine of judicial estoppel.

The Court stated the doctrine of judicial estoppel to be aimed at preventing "a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by him in a prior legal proceeding." *Bates,* 997 F.2d at 1037. In distinguishing equitable estoppel which ensures fairness in the relationship between parties, the Court went on to state:

> [J]udicial estoppel protects the sanctity of the oath and the integrity of the judicial

process. Thus, there are two distinct objectives behind judicial estoppel, both of which seek to protect the judicial system. First, the doctrine seeks to preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions. Preserving the sanctity of the oath prevents the perpetuation of untruths which damage public confidence in the integrity of the judicial system. Second, the doctrine seeks to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings.

*　　*　　*　　*　　*　　*

By focusing on the rationales behind judicial estoppel, the elements of the doctrine become clear. First, the party against whom the estoppel is asserted must have argued an inconsistent position in a prior proceeding; and second, the prior inconsistent position must have been adopted by the court in some manner.

997 F.2d at 1037–38 (footnotes omitted).

The court reversed the decision of the district court deciding that the second element was not satisfied because the settlement of Lyons' FELA action neither required nor implied judicial acceptance of his claims of permanent disability and therefore there was no basis for invoking judicial estoppel to his Rehabilitation Act claim.

A critical reading of *Bates* gives rise to several questions and therefore to some uncertainty regarding the reach of its holding. As has been indicated above, the Court stated the doctrine to be aimed at preventing "a party from asserting a factual position in a legal proceeding that is contrary to a prior legal proceeding." The first question prompted by that statement is what is meant by a legal proceeding? At a later point in the opinion, as has been indicated above, the Court wrote that "the doctrine seeks to preserve the sanctity of the oath by demanding absolute truth and consistency in all *sworn* positions." The second question prompted by *that* statement is does "legal proceeding" embrace any proceeding, e.g., administrative, quasi-judicial, in which a "sworn position" is taken? In writing that the second element of the doctrine is "that the prior inconsistent position must have been adopted *by the court*

in some manner," the third question raised is did the court intend to restrict the demand for the sanctity of an oath and "absolute truth and consistency in all sworn positions" to an oath taken in a court? The Court acknowledged in *Bates* that the doctrine of judicial estoppel was "never. . . . clearly defined in this Circuit." 997 F.2d at 1037.

Prior to addressing the questions posed, it is interesting to note that the only three Second Circuit cases the court identified as having discussed the doctrine in detail defined it in these terms: In *Young v. United States Dep't of Justice*, 882 F.2d 633 (2d Cir.1989), *cert. denied*, 493 U.S. 1072, 110 S.Ct. 1116, 107 L.Ed.2d 1023 (1990), the court wrote:

> The judicial estoppel doctrine . . . may prevent a party who benefits from the assertion of a certain position, from subsequently adopting a contrary position. . . . It is supposed to protect judicial integrity by preventing litigants from playing "fast and loose" with courts, thereby avoiding unfair results and "unseemliness." (Citations omitted) The circumstances under which the doctrine could be applied are far from clear."

882 F.2d at 639 (citations omitted). (It is respectfully submitted that the court misspoke when it added "[t]he key ingredient, however, is reliance" thus confusing equitable estoppel with judicial estoppel).

In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109, 114 (2d Cir.1990), the court made only a cursory reference to the doctrine as applying only if the party against whom it is claimed actually succeeded in obtaining a judgment as a result of an inconsistent position. In *Sperling v. United States*, 692 F.2d 223 (2d Cir.1982), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983), in a concurring opinion, it was observed that "litigants should not be permitted to play 'fast and loose with the courts' by taking inconsistent positions in related proceedings." 692 F.2d at 227. It is fair to say, the characterization in *Bates* notwithstanding, neither of those cases discussed the doctrine "in detail." Research has revealed only two later cases in which

this circuit made reference to the doctrine. In *In re Brody*, 3 F.3d 35 (2d Cir.1993), the court acknowledged its existence by tersely noting that "[a]lthough under some circumstances the doctrine of judicial estoppel may preclude a party from presenting an argument, (citing *Bates* ), the doctrine applies only when the party has taken an inconsistent position in a prior proceeding." 3 F.3d at 39. Finally, in *AXA Marine and Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.*, 84 F.3d 622 (2d Cir.1996), the court relying once again on *Bates* described judicial estoppel as "a doctrine that forbids a party from advancing contradictory factual positions in separate proceedings. The doctrine attempts to insure 'the sanctity of the oath and the integrity of the judicial process.' (Quoting *Bates* ). A party invoking judicial estoppel must show that (1) the party against whom judicial estoppel is being asserted advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner." 84 F.3d at 628. The repetition of the holding of *Bates* raises and leaves unanswered the same questions which necessarily flow from that holding. Those questions will now be addressed.

a. What is meant by "legal proceeding" and do those words embrace any proceeding, e.g., administrative, quasi-judicial, in which a "sworn position" is taken?

The answer to those questions, I would submit, becomes readily apparent when the indelible thread that runs through the cases is kept clearly in view, which is that the doctrine of judicial estoppel is aimed at respecting the sanctity of the oath and the integrity of the judicial process. The staunch insistence upon the sanctity of the oath and all that it implies for the integrity of the judicial process is tenaciously maintained notwithstanding the view surely espoused by some, including *Wigmore*, that "[i]t can hardly be denied that the moral efficacy of the oath has long since ceased to be what it once was." 6 James H. Chadbourn, *Wigmore on Evidence* § 1827 (rev. ed. 1976). The assumption aside that it may no longer be believed that the divine hand will smite the liar, it cannot be gainsaid that having taken the oath, the fear of being indicted for perjury may inhibit false testimony and serve the integrity of the judicial process. If, indeed, it is the sanctity of the oath and the integrity of the process that lies at the heart of the doctrine of judicial estoppel then the answer to the question posed must be that "the truth is no less important to an administrative body acting in a quasi-judicial capacity than it is to a court of law." *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 604 (9th Cir.1996). The majority of courts have so held whether granting summary judgment to an employer on the ground of judicial estoppel or on the ground that the plaintiff cannot make out a prima facie case, a prerequisite of which is that he is a "qualified person with a disability" who can perform the job as contemplated by the ADA, 42 U.S.C. §§ 12111(8), 12112(a). A discussion of a sampling of those cases which are exquisitely applicable to this one will suffice.

In *Muellner v. Mars, Inc.*, 714 F.Supp. 351 (N.D.Ill.1989), the plaintiff sustained a work related injury and thereafter applied for disability benefits from the Social Security Administration ("SSA"). She submitted a disability report which she signed precisely as Mr. Simon did, directly beneath the following warning: "knowing that anyone making a false statement or representation of a material fact for use in determining a right to payment under the Social Security Act commits a crime punishable under federal law, I certify that the above statements are true." 714 F.Supp. at 352. She succeeded in obtaining disability payments, and precisely as Mr. Simon has done here, continued to receive them during the pendency of her action. After being on disability for two years, Muellner was terminated as were her employer's long-term disability benefits. She claims that she was not disabled when she applied for social security benefits and is not currently disabled but that she was placed on disability leave by her employer because she refused to accept early retirement. The defendant moved for summary judgment contending that the plaintiff should be judicially estopped from controverting her prior statements that she was disabled and unable to work and that she could not, therefore, create a genuine issue of material fact regarding

her ability to work during the relevant period. The plaintiff's opposition to the motion is bottomed upon her assertion that the doctrine of judicial estoppel is inapplicable because there has not been a prior *judicial proceeding* (emphasis mine). The defendant's motion for summary judgment was granted in a thoughtful opinion, portions of which, peculiarly relevant to this case, will be set out:

> Muellner's application for disability benefits amounted to the first step in an administrative proceeding which was quasi-judicial in nature.... That Muellner was immediately successful at obtaining disability benefits and did not have to proceed to an actual hearing in order to prevail ultimately does not alter the essential character of the procedure involved in applying for disability benefits.

> The SSA administrator's decision to pay disability benefits as sought by Muellner in her claim amounts to a quasi-judicial endorsement of Muellner's prior position of disability.

714 F.Supp. at 358.

In observing that if Muellner was not disabled she should never have applied for disability benefits and by denying that she was disabled she "flaunts the ... fraud she committed on the SSA, and still commits by her continued acceptance of disability benefits," *Id.* at 359, the court presaged the facts and the opinion in this case. After restating the function of judicial estoppel to be the protection of the integrity of the judicial process, the court concluded that Muellner was estopped to assert that she was able to perform the duties of her job.

In *Cline v. W. Horseman, Inc.*, 922 F.Supp. 442 (D.Colo.1996) the plaintiff was dismissed from her job and brought suit contending that the defendant failed to reasonably accommodate her disability and thus violated the ADA. Since her dismissal she has collected long term disability benefits from three sources including the SSA and based on those facts the defendant argues that she is not "a qualified person with a disability" and is thus precluded from asserting an ADA claim as a matter of law. In granting the defendant's motion for summary judgment the court noted the following: (1) "Disability" under the Social Security Act is defined to mean an inability to engage in any substantial gainful activity because of physical impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). To meet that definition the claimant must have a severe impairment which prevents him from doing his previous work or any other substantial gainful activity existing in the national economy. 20 C.F.R. § 404.1505 (1995). In awarding disability benefits, the Administrative Law Judge found the plaintiff to be disabled, driving the court to conclude as a matter of law that the plaintiff cannot be "disabled" and entitled to receive SSA benefits and yet still be able to perform the essential functions of her job with the defendant. The estoppel argument, said the court, was a persuasive one and cited the following cases, reaching the same result: *Reiff v. Interim Personnel, Inc.*, 906 F.Supp. 1280, 1289 (D.Minn.1995) (the substantial weight of authority favors summary judgment when plaintiff received disability benefits); *Nguyen v. IBP, Inc.*, 905 F.Supp. 1471, 1484 (D.Kan.1995) ("Federal courts facing similar situations have ruled as a matter of law that plaintiff was not 'a qualified individual with a disability.' "); *Reigel v. Kaiser Found. Health Plan of N. Carolina*, 859 F.Supp. 963, 970 (E.D.N.C. 1994) ("Plaintiff ... cannot speak out of both sides of her mouth with equal vigor and credibility before this court."); *Smith v. Midland Brake, Inc.*, 911 F.Supp. 1351, 1357 (D.Kan.1995) ("This court has consistently held that where an employee has alleged that he is totally disabled in order to receive disability benefits, he is estopped from claiming that he can perform the essential functions of a job under the ADA."); *Lamury v. Boeing Co.*, 1995 WL 643835 (D.Kan.1995) (elements of estoppel present where employee previously obtained workers' compensation on the ground that she was unable to do her job); *Garcia–Paz v. Swift Textiles, Inc.*, 873 F.Supp. 547 (D.Kan.1995) (plaintiff who represented she was disabled in order to receive social security and long term disability benefits is estopped from claiming she was qualified under the ADA). In *August v. Offices Unlimited, Inc.*, 981 F.2d 576, 581

(1st Cir.1992) and *Beauford v. Father Flanagan's Boys' Home,* 831 F.2d 768, 770 (8th Cir.1987), *cert. denied,* 485 U.S. 938, 108 S.Ct. 1116, 99 L.Ed.2d 277 (1988), summary judgment in favor of employers was affirmed in analogous cases.

In *McNemar v. Disney Store, Inc.,* 91 F.3d 610 (3rd Cir.1996) (Aldesert, J.) the question before the court was stated to be whether the plaintiff is judicially estopped from contending that he is a "qualified person with a disability ... who, with or without reasonable accommodation can perform the essential functions of a job" in accordance with the ADA, 42 U.S.C. §§ 12111(8), 12112(a), in light of his representations to the SSA and state agencies that he was totally disabled and unable to work. In holding that the plaintiff was estopped the court invoked the doctrine of judicial estoppel reciting its familiar purposes to be protecting the integrity of the judicial process; preventing parties from playing fast and loose with the courts by asserting inconsistent positions; preventing parties from speaking out of both sides of their mouth with equal vigor and credibility before the court. The court in an eloquent coda to this portion of its opinion wrote, at page 620:

> "The fact that the choice between obtaining federal or state disability benefits and suing under the ADA is difficult does not entitle one to make false representations with impunity. Nothing in the reasoned jurisprudence of judicial estoppel goes this far. Nothing grants a person the authority to flout the exalted status that the law accords statements made under oath or penalty of perjury. Nothing permits one to undermine the integrity of the judicial system by 'playing fast and loose in the courts by asserting inconsistent positions.'" Nothing vests such immunity. (Citation omitted).

*Rissetto v. Plumbers and Steamfitters Local 343,* 94 F.3d 597 (9th Cir.1996) is significant in several respects. The plaintiff sued her employer alleging age discrimination under the California Fair Housing and Employment Act. After suffering a work-related injury, she filed a claim for workers' compensation disability benefits asserting that she was unable to work. The plaintiff and the defendant's insurer settled her workers' compensation claim by the insurer agreeing to pay her total disability benefits. That settlement was approved by the workers' compensation appeals board. The defendant's motion for summary judgment based upon the doctrine of judicial estoppel was granted. The court squarely decided two issues which have particular significance in light of this circuit's decision in *Bates.* The first responds directly to the question posed above and is at 94 F.3d at 604:

> b. Are Workers' Compensation Proceedings Equivalent to Judicial Proceedings?

> Unsurprisingly given its name, judicial estoppel is often articulated as applying to "judicial" proceedings. However, many cases have applied the doctrine where the prior statement was made in an administrative proceeding, and we are not aware of any case refusing to apply the doctrine because the prior proceeding was administrative rather than judicial.

> We hold that the doctrine of judicial estoppel is not rendered inapplicable in this case by the fact that plaintiff's prior position was taken in a workers' compensation proceeding rather than in a court. (Citations omitted).

In accord are *Simo v. Home Health & Hospice Care,* 906 F.Supp. 714, 718 (D.N.H. 1995) (administrative and quasi-judicial proceedings, such as those conducted by the SSA are considered prior legal proceedings under the doctrine of judicial estoppel); *UNUM Corp. v. United States,* 886 F.Supp. 150, 158 (D.Me.1995); *Zapata Gulf Marine Corp. v. Puerto Rico Maritime Shipping Auth.,* 731 F.Supp. 747, 750 (E.D.La.1990) (The doctrine applies equally to positions taken in quasi-judicial administrative proceedings as it does in courts of law); *Brown v. Nat'l R.R. Passenger Corp.,* 1990 WL 119558 (N.D.Ill.1990) (application for disability benefits amounted to the first step in an administrative proceeding which was quasi-judicial in nature).

The second issue, which is not presented in this case, addresses one decided without much discussion in *Bates* and which is decid-

ed differently in *Rissetto* after posing the question, at 94 F.3d at 604–05:

c. Does a Favorable Settlement Constitute Success?

Under what is sometimes termed the "majority" view of the doctrine of judicial estoppel, the prior inconsistent statement must have been "actually adopted by the court in the earlier litigation."

[Having settled her claim] It ... cannot be said literally that her prior statement was "actually adopted" by any court or administrative tribunal.

It can, however, be said that plaintiff succeeded or prevailed on her workers' compensation claim.... In our view, the fact that plaintiff prevailed by obtaining a favorable settlement rather than a judgment should have no more relevance than in the context of civil rights attorney's fees awards, i.e., none whatever. See *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) (party who obtains consent decree is "prevailing party" no less than one who obtains a judgment on the merits).

We hold that a favorable settlement constitutes the success required under the so-called majority view.

This view was announced many years ago in *Scarano v. Central R.R. Co. of New Jersey,* 203 F.2d 510, 513–14 (3rd Cir.1953).

If I am correct in the belief that it is the sanctity of the oath and the integrity of the process which energizes the doctrine of judicial estoppel then it should follow that the fact of settlement rather than judgment is irrelevant. The essential validity of that conclusion is most vividly and simply stated by Judge Posner in *Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420 (7th Cir.1993) at page 1428: "By making them choose one position irrevocably, the doctrine of judicial estoppel raises the cost of lying." [2]

The plaintiff's reliance upon *Overton v. Reilly,* 977 F.2d 1190 (7th Cir.1992) is entirely misplaced. Overton had applied for SSA disability benefits and informed that agency of his offer of employment before his disability benefits were awarded. Overton subsequently commenced an action against the EPA alleging that he was discriminated against in violation of the Rehabilitation Act (the "Act") of 1973. Having revealed to the SSA that he was to commence work at the EPA he was not estopped from asserting employment discrimination. Neither the district court nor the court of appeals invoked the doctrine of judicial estoppel nor were they urged to by the EPA. fn. 6 at 977 F.2d at 1196. EPA's motion for summary judgment was denied because the court held that a genuine and material issue of fact was raised as to whether the EPA made every reasonable accommodation for Overton's handicap as required by 29 U.S.C. § 791(b) of the Act. The other cases upon which the plaintiff relies are similarly misplaced and inapposite.

 Simon is the paradigmatic judicial estoppel plaintiff. He has played fast and loose with the system, arguing "whatever state of facts seems advantageous at a point in time, and a contradictory state whenever self-interest may dictate a change." 1B Jeremy C. Moore, et al., *Moore's Federal Practice* ¶ 0.405[8] (2d ed. 1996). The cost to Simon of lying is thus raised by the doctrine of judicial estoppel which compels him to choose irrevocably his sworn position before the SSA that he was totally disabled thereby preserving the sanctity of the oath and the integrity of the process. The defendant's motion for summary judgment is, for the foregoing reasons granted.

I am sensitive to the fact that the Court of Appeals for this Circuit has not yet addressed the issue of judicial estoppel where social security disability benefits have been awarded upon the oath of disability of an ADA claimant. I am also mindful, however, of Judge Learned Hand's dissenting opinion in *Spector Motor Serv., Inc. v. Walsh,* 139 F.2d 809 (2d Cir.1944) in which he wrote, at page 823, that it is undesirable "for a lower

---

**2.** *Chaveriat* also decided that "[t]hough called judicial estoppel, the doctrine has been applied, rightly in our view, to proceedings in which a party to an administrative proceeding obtains a favorable order that he seeks to repudiate in a subsequent judicial proceeding." 11 F.3d at 1427 (citations omitted).

court to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant; on the contrary I conceive that the measure of its duty is to divine, as best it can, what would be the event of an appeal in the case before us."

## II.

### DEFENDANT'S MOTION FOR SANCTIONS PURSUANT TO RULE 11, FEDERAL RULES OF CIVIL PROCEDURE

The portion of Rule 11 that has relevance for this motion is as follows:

(b) Representations to Court. By presenting to the court ... a ... paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(2) the claims, ... and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for ... the establishment of new law.

(3) the allegations and other factual contentions have evidentiary support....

■ Neither of those sub-divisions is applicable for the reason that the Court of Appeals for this Circuit has not had occasion to decide whether the doctrine of judicial estoppel will be applied where the sworn statement subsequently sought to be disavowed was made in an administrative or quasi-judicial proceeding. The court in *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037 (2d Cir.1993) acknowledged that the doctrine of judicial estoppel has never been clearly defined in this circuit. That acknowledgment makes § 11(b)(2) inapplicable. *See, e.g., Marvello v. Chemical Bank*, 923 F.Supp. 487 (S.D.N.Y.1996). The sworn declaration by the plaintiff in his application for disability benefits may be said to undermine the evidentiary support of his complaint to the effect that he is fully qualified to fill the position from which he was terminated, thus implicating Rule 11(b)(3). Although I am not aware of any case in this Circuit in which this precise issue was addressed, research would have readily revealed to plaintiff's counsel

the plethora of cases in which such declaration undermined the evidentiary support required for a *prima facie* case. If, however, a charitable view of Rule 11 would encourage a less literal reading of 11(b)(3), even a benevolent reading of Rules 26(e)(1) and 37(c)(1) of the Federal Rules of Civil Procedure would drive the court to impose sanctions.

■ The violation by the plaintiff's attorney of Rule 26(e)(1) in failing to supplement his disclosures by revealing the plaintiff's application for and receipt of social security disability benefits of which he conceded to have knowledge and failed to disclose is beyond cavil. For that failure to disclose sanctions are clearly warranted. Rule 37(c)(1), Fed.R.Civ.P., provides that the offending party may be required to pay reasonable expenses, including attorney's fees, caused by the failure to disclose. That sanction is entirely appropriate in this case. The defendant's attorney is directed to submit an affidavit of such expenses and fees incurred by reason of the breach by the plaintiff's attorney of his duty to disclose. That affidavit shall be submitted within twenty days of the date of this order and the plaintiff's attorney shall have five days thereafter to respond.

### CONCLUSION

For all of the reasons heretofore stated, the defendant's motion for summary judgment is granted and its motion for sanctions is granted to the extent indicated.

SO ORDERED.