**Ralph D. DETZ, Plaintiff,**

v.

**GREINER INDUSTRIES, INC., Defendant.**

**No. 01–CV–5096.**

United States District Court, E.D. Pennsylvania.

Aug. 15, 2002.

---

**20.** *See supra* Footnote 7, regarding damages.

James A. Nettleton, Jr., James A. Nettleton, Jr., P.C., Lancaster, PA, Jerome C. Finefrock, Lancaster, PA, for Plaintiff.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

### I. INTRODUCTION

Plaintiff Ralph D. Detz ("Detz") has brought this action against Defendant Greiner Industries, Inc. ("Greiner"), alleging that Defendant violated his rights under The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and The Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq. Presently before this Court is Defendant's Motion for Summary Judgment, filed on July 16, 2002, asking this Court to grant summary judgment in its favor on all of Plaintiff's claims against it; Plaintiff's response thereto, filed on August 7, 2002; and Defendant's Reply to Plaintiff's Opposition to Defendant's Summary Judgment Motion, filed on August 9, 2002.

We have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

### II. STANDARD OF REVIEW

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202. All inferences must be drawn, and all doubts resolved, in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.1985), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

On motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *Id.* at 321 n. 3, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (quoting Fed.R.Civ.P. 56(e)); *see First Nat'l Bank of Pennsylvania v. Lincoln Nat'l Life Ins. Co.,* 824 F.2d 277, 282 (3d Cir. 1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2505.

In discrimination and retaliation cases, proof at summary judgment follows a well-established "burden-shifting" approach first set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once a plaintiff has established a prima facie case of discrimination or retaliation, the defendant must rebut an inference of wrongdoing with evidence of a legitimate, non-discriminatory, non-retaliatory reason for the action taken. *See Weston v. Commonwealth of Pennsylvania,* 251 F.3d 420, 432 (3d Cir.2001); *Delli Santi v. CNA Ins. Co.,* 88 F.3d 192, 199 (3d Cir.1996). If a defendant successfully meets its burden in a discrimination or retaliation case, then in order to avoid summary judgment, Plaintiff must present evidence of pretext, or cover-up, or show that discrimination played a role in the employer's decision-making and had a de-

terminative effect on the outcome. *See Weston*, 251 F.3d at 432; *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994).

## III. *FACTUAL AND PROCEDURAL BACKGROUND*

Greiner, a welding and fabricating company, employed Detz at three separate times throughout the 1980s and 1990s. Detz first worked for Greiner from 1979 or 1980 to 1982 and then from 1989 or 1990 to 1992. (R. Detz Dep. at 37; 42–47.) Detz last worked for Greiner from 1994 to 1997. (*Id.* at 47; Complaint at ¶ 7.)[1] The termination of his final work period is the subject of this lawsuit. At the time of the termination of his final period of employment, Detz was 59 years old. (R. Detz Dep. at 5; Complaint at ¶ 8.)

There are two broad categories of Greiner employees: those who work in Greiner's fabrication facility and those who work on outside projects as part of Greiner's road crews. (R. Detz Dep. at 72–75; L. Dalessandri Dep. at 23–24.) During his periods of employment with Greiner through December of 1994, Detz worked as a millwright as a member of the company's road crews. (R. Detz Dep. at 6, 70–84.) On December 5, 1994, Detz was injured. (*Id.* at 26.) Greiner's policy with respect to an employee who has suffered a work-related injury is to place him or her "in the tool room as a light duty employee or an alternative work employee" until the employee is able to return to his or her pre-injury position. (J. Gamber Dep. at 29.) The philosophy is to help the employee "to be as productive as [he or she] can [be] and also to rehab them back into the workplace." (*Id.* at 29–30.) Accordingly,

following his injury in December of 1994, Detz was placed in the tool room on light duty status. (R. Detz Dep. at 26–27.) Prior to his injury, working as a millwright, Detz performed a variety of tasks, including welding and installation and leveling of machinery. (*Id.* at 39–41.) Following his injury, while on light duty, Detz's tasks included tool repair and cleaning, painting, delivering tools in the shop and making photocopies. (*Id.* at 84–92.)

While working in the tool room, Detz was supervised by David Hartman ("Hartman"), the tool room foreman, whose job it was to maintain and repair the tools and machinery used in the fabrication facility. (D. Hartman Dep. at 5, 10.) Detz contends that while working in the tool room, Hartman never used Detz's first name, but instead referred to Detz as "old man" and also on one occasion implied that Detz's job was in danger. (R. Detz Dep. at 48–53.) Detz alleges that he was frequently told to perform tasks that were outside of his work restrictions and was told that he would be reported if he refused to do the tasks. (*Id.* at 48–49.) Detz states that he complained several times to Joan Gamber, Greiner's Director of Human Resources and Safety, about Hartman's treatment of him. (*Id.* at 53–54.) At some point in 1997, as Defendant contends, "[i]n order to alleviate an obvious personality conflict" between Detz and Hartman (Defs. Mot. for Sum. Judg. at 8), Detz was removed from Hartman's supervision and assigned to work in a temporary office trailer. (R. Detz Dep. at 158–65; D. Hartman Dep. at 30; J. Gamber Dep. at 21.) At this point Detz's tasks included making photocopies and deliveries. (R. Detz Dep. at 158–65.)

On or about November 26, 1997, Detz was terminated, or laid off[2], from Greiner.

**1.** We note that Plaintiff states in his deposition that his final period of employment ran from 1994 to 1997 but that the Complaint states that his final period of employment ran from 1990 to 1997. (R. Detz Dep. at 47; Complaint at ¶ 7.) This inconsistency is not

determinative to the matter currently before this Court.

**2.** We note that although Plaintiff refers to the end of his employment as his "termination," Defendant has carefully referred to the end of

Franklin Greiner, Jr., the head of Greiner Industries, Inc., made the decision to end Plaintiff's employment. (F. Greiner Dep. at 7.) Plaintiff's understanding of Mr. Greiner's conversation with him is that the company's reason for terminating Detz was because Detz's doctor had advised that Detz could no longer do any type of work, not even light duty work. (R. Detz. Dep. at 28–29.) Plaintiff contends though that given Hartman's comments regarding his age and given that a younger employee who was also performing light duty work was retained, the company terminated him because of his age. (*Id.* at 29–30.) The company explains that Detz's lay-off was unrelated to his light duty status or to his age; the company maintains that his lay-off was a result of a business slump, was part of an overall reduction in the size of the company's work force and was accompanied by twenty-seven other lay-offs. (Defs.' Mot. for Sum. Judg. At 8–9.)

Following Detz's termination, on April 28, 1998, Detz applied for disability benefits from the Social Security Administration ("SSA"). In his application for benefits, Detz stated under the penalty of perjury that he "became unable to work because of [his] disabling condition on November 26, 1997." (R. Detz App. For Disability Insurance Benefits at 1.) He further stated that he would "notify the Social Security Administration if [his] medical condition improves so that [he] would be able to work, even though [he] has not yet returned to work." (*Id.*)

In an SSA decision dated December 2, 1998, Detz was awarded disability benefits. The SSA found that Detz has one or more medically interminable impairments that are considered to be "severe" by the Social Security Regulations. (SSA Decision at 2.) The decision noted that "the symp-

toms associated with the impairments, which limit or restrict the claimant's ability to function, include hand and arm pain, hand and arm numbness, shortness of breath, depression, anxiety, and agitation." (*Id.*) The SSA concluded that based on the objective medical evidence, "the impairments are reasonably expected to produce the symptoms identified." (*Id.*) Further, the SSA found that "the claimant's statements with regard to the intensity, persistence and limiting effects of the symptoms are generally credible." (*Id.*) Based on the evidence before it, the SSA reasoned that "the claimant either has no past relevant work or cannot perform any of the past relevant work given the residual functional capacity determined above." (*Id.* at 3.) The SSA therefore went on to consider the vocational factors of age, education and work experience "to determine whether the claimant can perform any other work which exists in significant numbers in the national economy." (*Id.*) The SSA reasoned that given his residual functional capacity and the vocational factors, "there are no jobs existing in significant numbers in the national economy which the claimant can perform." (*Id.* at 4.) The SSA ultimately decided that Detz was "entitled to a period of disability beginning on November 26, 1997" . . . and that "the claimant's disability has continued through at least the date of this decision." (*Id.* at 5.)

On January 28, 1998, Detz filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") and with the Equal Employment Opportunity Commission ("EEOC") in which he alleged that Greiner had discriminated against him because of both his age and his physical limitations. The PHRC found that there

---

Detz's employment as "a lay-off." Our use of either term in this Opinion is without signifi-

cance.

was insufficient evidence to support a finding of probable cause with respect to either of Plaintiff's claims of discrimination. On August 16, 2001, the EEOC issued a Dismissal and Notice of Rights in which it adopted the findings of the PHRC and notified Detz of his right to sue in federal or state court under the Americans with Disabilities Act (ADA) and/or the ADEA.

Detz commenced this action in federal court in October of 2001. Detz claims that Greiner violated his rights under the ADEA and the PHRA in discriminating against him on the basis of his age; Detz has not pursued any disability discrimination claims here.

## IV.  DISCUSSION

### A.  Elements of Prima Facie Case of Age Discrimination

■ Under the ADEA, an employer is prohibited from discharging any individual or otherwise discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age.  29 U.S.C. § 623(a)(1).  To make out a prima facie case for age discrimination under the ADEA and the PHRA, Plaintiff must show:  (1) he was a member of a protected class, i.e., that he was over forty years of age;  (2) he is qualified for the position;  (3)

he suffered an adverse employment decision;  and (4) he was ultimately replaced by a person sufficiently younger to permit an inference of age discrimination or, in a reduction in force situation, the employer retained someone similarly situated to him who was sufficiently younger.[3]  *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Anderson v. Consolidated Rail Corp.,* 297 F.3d 242 (3d Cir.2002); *Duffy v. Paper Magic Group, Inc.,* 265 F.3d 163, 167 (3d Cir.2001).[4]

### B.  Judicial Estoppel

### 1.  Defendant's Argument for Judicial Estoppel

Defendant concedes that Plaintiff can establish the first and third elements of the prima facie case:  Defendant states that there is no dispute that Detz is a member of the protected class or that he suffered an adverse employment action. (Defs.' Mot. for Sum. Judg. at 11.)  However, Defendant asserts that Detz cannot make out the second element.  Defendant argues that Detz should be judicially estopped from claiming that he was qualified for the position.  Defendant points to the fact that Detz applied for, and received, Social Security disability benefits and, in so doing, represented to the SSA that he

---

**3.** In *Anderson v. Consolidated Rail Corp.,* 297 F.3d 242 (3d Cir.2002), the Third Circuit clarified that "to present a prima facie case raising an inference of age discrimination in a reduction in work force situation [as opposed to demotion or discharge cases], the plaintiff must show, as part of the fourth element, that the employer retained someone similarly situated to him who was sufficiently younger." Thus, in such a case it is not enough for a person to show that the employer retained someone younger than the plaintiff; the plaintiff must in addition show that the person retained was similarly situated to the plaintiff.

**4.** We note that the PHRA is generally interpreted in accord with its federal counterparts

like Title VII, the ADA and the ADEA.  *See Kelly v. Drexel Univ.,* 94 F.3d 102, 105 (3d Cir.1996); *see also Aguilar v. Devault Foods,* No. Civ.A. 99–4808, 2001 WL 484133, at *2 n. 1 (E.D.Pa. March 12, 2001) ("Under Pennsylvania law, the analysis for a claim brought under the PHRA is identical to the analysis applied under Federal anti-discrimination statutes."); *Chmill v. City of Pittsburgh,* 488 Pa. 470, 412 A.2d 860, 871 (.1980) ("[A]s our prior cases have suggested, the Human Relations Act should be construed in light of principles of fair employment law which have emerged relative to the federal statute.") (internal quotations and citations omitted).

was disabled and unable to work. Defendant urges that "[b]ecause a successful disability claim requires a representation to and determination by the Social Security Administration that the plaintiff is totally disabled and unable to work, a subsequent claim [under the ADEA] that the plaintiff is qualified for the position at issue in an age discrimination action is factually incompatible with the Social Security Administration disability determination." (*Id.* at 17–18.) Defendant argues that "judicial estoppel precludes Detz' [age discrimination] claims." (*Id.* at 18.)

### 2. Doctrine of Judicial Estoppel

■ "Federal courts possess inherent equitable authority to sanction malfeasance." *Montrose Med. Group Participating Savings Plan v. Bulger,* 243 F.3d 773, 779 (3d Cir.2001). One such equitable tool is judicial estoppel. *See id.* "Judicial estoppel bars a litigant from asserting a position that is inconsistent with one he or she previously took before a court or agency." *Id.* The basic principle behind judicial estoppel is that "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Lorde v. City of Philadelphia,* No. CIV.A. 98–5267, 2000 WL 1763673, at *1 (E.D.Pa. Nov. 30, 2000).

■ Three elements must be satisfied before a district court may apply judicial estoppel. *Montrose,* 243 F.3d at 779.

First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position in bad faith—i.e., with the intent to play fast and loose with the court. Finally, a district court may not employ judicial estoppel unless it is tailored to address the harm identified and no lesser sanc-

tion would adequately remedy the damage done by the litigant's misconduct.

*Id.,* 243 F.3d at 779–80 (internal quotations and citations omitted).

■ We note that "[s]ummary judgment is appropriate when operation of judicial estoppel renders a litigant unable to state a prima facie case." *Id.,* 243 F.3d at 779.

### 3. The Supreme Court's Recent Decision in Cleveland v. Policy Management Systems Corp.: Judicial Estoppel and the SSDI Claimant/ADA Plaintiff

Federal courts have wrestled with what legal effect of the application for, or receipt of, Social Security disability benefits has upon a subsequent suit based on federal employment laws like Title VII, the ADA and the ADEA. *See Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 800, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) (noting the disagreement among the Circuits about the legal effect upon an ADA suit of the application for, or receipt of, disability benefits). Courts have divided over the specific question of whether some form of judicial estoppel should be adopted in the context of a federal employment claim where the plaintiff has already applied for, and/or received, Social Security disability benefits. *See* Don C.H. Kautzmann, *Compatability of Claims: The U.S. Supreme Court Declines to Adopt a Presumption of Judicial Estoppel Against Plaintiffs in an Americans with Disabilities Act Claim Who Have Already Applied for Social Security Disability Benefits:* Cleveland v. Policy Management Systems Corp., *526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999),* N.D.L.Rev. 411, 416–19 (2000) (noting the division among Circuit courts as to whether judicial estoppel should bar a plaintiff's claim under the ADA where the plaintiff has already applied for, or received, disability benefits).

The issue before this Court is whether plaintiff's application for, and receipt of, Social Security benefits, which application and receipt required him to swear that he is unable to work because of his disabling condition, should estop him from seeking relief under the ADEA. Although the United States Supreme Court has not decided this precise issue, the Court did recently decide the legal effect that the receipt of Social Security benefits has on a plaintiff's subsequent *ADA* claim. In *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), the Court considered the appellate court's decision to grant summary judgment in favor of the employer on the ground that the "ADA plaintiff's represent[ation] to the SSA that she was totally disabled created a rebuttable presumption sufficient to judicially esto[p] her later representation [under the ADA] that, for the time in question, with reasonable accommodation, she could perform the essential functions of her job." *Cleveland*, 526 U.S. at 802, 119 S.Ct. 1597 (internal quotations and citations omitted). As the Court explained, "[t]he Court of Appeals thought, in essence, that claims under both Acts would incorporate two directly conflicting propositions, namely, 'I am too disabled to work' and 'I am not too disabled to work.' And in an effort to prevent two claims that would embody that kind of factual conflict, the court used a special judicial presumption, which it believed would ordinarily present a plaintiff like Cleveland from successfully asserting an ADA claim." *Id.*

The Supreme Court in *Cleveland* concluded that "despite the appearance of conflict that arises from the language of the two statutes, the two claims do not inherently conflict to the point where courts should apply [such] a special negative presumption ... because there are too many situations in which an SSDI claim and an ADA claim can comfortably exist side by side." *Id.*, 526 U.S. at 802–03, 119 S.Ct. 1597.

The Court's primary reason for deciding that the two claims do not necessarily conflict was that "the ADA defines a 'qualified individual' to include a disabled person 'who ... can perform the essential functions' of her job *'with reasonable accommodation.'*" whereas "when the SSA determines whether an individual is disabled for SSDI purposes, it does *not* take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI." *Id.* The Court reasoned that "[t]he result is that an ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it." *Id.*

Second, the Court pointed out that given the need to manage the large SSDI system efficiently, the SSA administers SSDI with the assistance of a five-step procedure that contains a set of presumptions about disabilities, job availability and their interrelation; as the Court explained, this simplification "eliminat[es] consideration of many differences potentially relevant to an individual's ability to perform a particular job" such that "an individual might qualify for SSDI under the SSA's administrative rules and yet, due to special individual circumstances, remain capable of 'perform[ing] the essential functions' of the job," *id.*, 526 U.S. at 804, and thus be eligible for relief under the ADA.

Third, the Court considered the fact that "the SSA sometimes grants SSDI benefits to individuals who not only can work, but are working." *Id.*, 526 U.S. at 805, 119 S.Ct. 1597. This may occur where in an effort to facilitate a disabled person's reentry into the workforce, the SSA authorizes

a trial-work period during which the SSDI recipient may receive full benefits. *See id.* The Court likewise noted that improvement in a disabled person's physical condition, while permitting the person to work, will not necessarily or immediately lead to a termination of SSDI benefits. The Court also recognized that "the nature of an individual's disability may change over time, so that a statement about that disability at the time of an individual's application for SSDI benefits may not reflect an individual's capacities at the time of the relevant employment decision." *Id.*

Finally, the Court noted that in the case of an individual who has merely applied for, but has not been awarded, SSDI benefits, any inconsistency in the theory of the claims is the kind of inconsistency that our legal system, which allows for liberal rules of pleading, normally tolerates. *See id.*

Given the potential for such circumstances to exist under which a party's SSDI claim and ADA claim would not be inconsistent, the Court declined to hold that a special legal presumption that would prevent an SSDI recipient from bringing an ADA suit should apply. Nevertheless, the Court did stress that "in some cases an earlier SSDI claim may turn out genuinely to conflict with an ADA clam." 526 U.S. at 805, 119 S.Ct. 1597. In this vein, the Court recognized that a plaintiff's sworn assertion in an application for disability benefits that she is unable to work does appear to negate an essential element of her ADA case, that she is a "qualified person with a disability"—that is, a person "who, with or without reasonable accommodation, can perform the essential functions" of her job, 42 U.S.C. § 12111(8), such that the grant of summary judgment in the employer's favor would be appropriate. *Id.,* 526 U.S. at 805–06, 119 S.Ct. 1597. Therefore, the Court declared that it is necessary for such a plaintiff to offer an explanation sufficient to show that the

positions are not in fact inconsistent. *Id.,* 526 U.S. at 806, 119 S.Ct. 1597. The Court emphasized that such a plaintiff "cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her previous sworn statement (by, say, filing a later affidavit that flatly contradicts the party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Id.* Rather, "[t]o defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job with or without 'reasonable accommodation.'" *Id.*

Applying these principles to the facts of the case, the Court decided that the plaintiff should have the opportunity in the trial court to present her explanation and the defendant should have the opportunity to contest that explanation and accordingly vacated the judgment of the Court of Appeals and remanded the case.

4. *Applicability of Judicial Estoppel in this Case*

a. *First Element: Inconsistent Positions*

■ Using the Court's decision in *Cleveland* as guidance, we turn to whether Detz's application for, and receipt of, Social Security disability benefits is inconsistent with his claim of age discrimination such that he should be estopped from claiming under the ADEA that he was qualified for his previous job. We begin by noting the nature of the alleged conflict. In order to apply for disability benefits and in order for the SSA to award benefits, the individual must claim, and the SSA must find, an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To receive benefits, an SSA claimant like Detz must have "physical or mental impairment or impairments ... of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ..." 42 U.S.C. § 423(d)(2)(A).

In his application for disability benefits, Detz swore under oath that "he became unable to work because of [his] disabling condition on November 26, 1997." Additionally, Detz submitted medical evidence to support his assertion that his disability prevents him from working. The SSA found that he was disabled and subsequently awarded him benefits effective November 26, 1997.

In contrast to the disability claim, in which Detz was required to claim that he could not perform his previous work (or any other existing position), in order to state a prima facie case for age discrimination, Detz must assert that he is qualified for his previous position. And, in fact, Detz asserts in his complaint that he "was fully qualified for the position." (Complaint at ¶ 10.) The conflict between the two claims lies in the fact that for the Social Security claim, Detz had to state that he was not qualified for his previous work (or for any existing position) whereas for the ADEA claim, Detz must state that he is qualified for his previous work.

We find that the positions asserted by Detz in his Social Security claim and his ADEA claim are fundamentally inconsistent. For purposes of the Social Security claim, Detz asserted that he was unable to work due to his disability as of November 26, 1997, the date of his termination, yet for his ADEA claim, Detz maintains that he was qualified for his previous position.[5] Moreover, none of the factors that persuaded the *Cleveland* court to decline to adopt a presumption of judicial estoppel in the case of an SSDI claimant/ADA plaintiff convinces this court that the doctrine of judicial estoppel should not be applied in this case.[6]

We turn to the first of the factors considered in *Cleveland*. It is significant that the ADEA contains no reasonable accommodation analysis. That is, as opposed to the ADA, under which a plaintiff must show, and a court must consider whether, with or without reasonable accommodation, he or she can perform the essential functions of the job, the ADEA simply requires—without regard to reasonable accommodation analysis—the plaintiff to show that he or she was qualified for the job in question. This distinction between the two statutes is important to our analy-

---

**5.** We note that the fact that Detz never used the term "totally disabled" in his Social Security disability application is not of consequence. Total disability may be inferred from the many impairments that he cites in his application. *See Muellner v. Mars, Incorporated,* 714 F.Supp. 351, 358–59 (N.D.Ill.1989). Total disability may also be inferred from the fact that the SSA ultimately awarded him disability benefits; such benefits are awarded only upon a finding that the claimant's impairments impede him from performing his previous work or any other position available in the national economy.

**6.** We recognize that *Cleveland* considered whether a *presumption* of judicial estoppel should apply in the case of an SSDI claimant/ADA plaintiff but that Defendant here asks us simply to consider whether the doctrine of judicial estoppel (as opposed to a flat presumption of estoppel) should apply. Nevertheless, the factors that *Cleveland* considered in determining whether a presumption of estoppel should apply are relevant to our analysis here.

sis. On the one hand, as the *Cleveland* court explained, the ADA, by virtue of its requirement that courts consider whether the plaintiff who might otherwise be unable to perform the job is, with reasonable accommodation, capable of performing the job functions, creates the possibility of a finding that the plaintiff's disability discrimination claim does not conflict with the plaintiff's claim for disability benefits. The ADEA, on the other hand, does not contain such language and, thus, as opposed to the ADA, does not, by its very terms, create the possibility that a plaintiff's disability and discrimination claims may be consistent with one another. Thus, Detz's case against the application of judicial estoppel is not, as was the plaintiff's in *Cleveland*, strengthened by the language of, and the analysis inherent in, the subject discrimination statute. Indeed, it appears, by virtue of this distinction between the ADA and the ADEA (with the ADA requiring reasonable accommodation analysis and the ADEA not requiring such analysis), that judicial estoppel is potentially available in a broader class of cases under the ADEA than under the ADA.

Likewise, *Cleveland*'s second reason for refusing to adopt a presumption of estoppel does not persuade us that judicial estoppel should not be applied in this case. The Court's second line of reasoning recognized that the simplified nature of social security decisions may result in oversight of the many factors relevant to an individual's ability to perform a particular job such that it may possible for an individual

to qualify for SSDI (where, without reference to the various factors, it would appear that the individual is disabled and incapable of performing any job) but, due to special individual circumstances, remain capable of performing the "essential functions of the job" for ADA purposes. The *Cleveland* court's analysis (that personal characteristics may render a person eligible for recovery under the ADA yet the person may still be eligible for disability benefits) rests on the specific language of the ADA, which mandates consideration of whether the ADA plaintiff, despite his disability, either with or without reasonable accommodation, is capable of performing the essential functions of the job. The ADEA, on the other hand, does not impose such a requirement. Instead, under the ADEA, the consideration is whether the individual is at least minimally qualified to perform the job; there need be no consideration of whether, given the plaintiff's individual circumstances, he remains capable of performing the essential job functions with or without reasonable accommodation. Because under the ADEA there is not the same type of consideration given to a plaintiff's individual circumstances that is provided for under the ADA by virtue of the reasonable accommodation requirement, the abbreviated nature of the SSA proceedings impacts less on the judicial estoppel decision in and ADEA case than in an ADA case. The abbreviated nature of the SSA proceeding is less likely lead to a decision to not apply judicial estoppel in a subsequent ADEA case than in a subsequent ADA case.[7]

---

**7.** We recognize that courts may engage in some analysis of a plaintiff's individual circumstances in determining under the ADEA whether the individual is qualified to perform his or her previous work. Nevertheless, the ADA's requirement that courts engage in a consideration of whether the plaintiff is able to perform the essential functions of the job with or without reasonable accommodation

calls for a consideration of individual circumstances that is different in degree and in intensity than any individualized consideration that occurs under the ADEA. Moreover, in this case, no individualized circumstances exist to suggest that Plaintiff may be qualified for his job for purposes of the ADEA despite the fact that he qualified for disability benefits. Plaintiff claimed in his application for

Nevertheless, we believe that scenarios may exist in which it is possible for a plaintiff's ADEA claim to be consistent with his or her earlier application for Social Security benefits. Turning to the *Cleveland* court's third point, we can imagine an ADEA case in which the temporary nature of the benefits, the changing nature of the disability or the context in which the disability claim is made would, as the *Cleveland* court recognizes sometimes occurs in ADA cases, result in a situation where the disability claim and the discrimination claim would not conflict. This may occur, for example, where SSDI benefits are awarded while an individual participates in a trial-work period; where the disability benefits recipient's condition improves yet he still continues to receive benefits for a period of time; or where the claimant's statement about the disability does not reflect the claimant's capacities at the time of the adverse employment action.

Despite the potential for such a situation to exist in an ADEA case, we find that is not the case here. This is not a case where the two statements can be reconciled. Detz was not participating in a trial-work period. Nor is there any evidence that his disability has changed; indeed, Detz continues to receive disability benefits. Nor is there any evidence that Detz's statement to the SSA that he is unable to work because of his disability did not reflect his capacities at the time that his employment with Greiner ended; indeed, he stated to the SSA that he became disabled as of November 26, 1997, which was also the date that his employment ended.[8] *Cf. Eaton v. Goodstein Mgmt., Inc.,* No. 97

CIV. 6582 TPG, 1999 WL 1037868, at *6 (S.D.N.Y. Nov. 15, 1999) (refusing to apply judicial estoppel in case alleging age and disability discrimination where plaintiff filed claim for disability insurance benefits six months before termination because there was a triable issue of fact as to the nature of the disability and whether the disability was in fact temporary).

Finally, the *Cleveland* court's concern that a per se rule of estoppel would contradict the usual practice in our system of allowing parties to set forth alternative theories and of tolerating any inconsistency in the theory of the alternative claims does not drive this case. This discussion in *Cleveland* targeted the situation in which the individual "has merely applied for, but has not been awarded, SSDI benefits." *Cleveland,* 526 U.S. at 805, 119 S.Ct. 1597. Here, it is not the case that Plaintiff was denied benefits and is now seeking alternative relief. Detz has been awarded, and continues to receive, disability benefits.

Thus, although some of the concerns that drive *Cleveland*'s refusal to apply a presumption of judicial estoppel to ADA claims filed by SSDI recipients may be present in another ADEA case wherein the defendant requests the court to apply judicial estoppel, they are not present here. We find that the position adopted by Detz in his SSA application for disability benefits and the position that he takes to advance his ADEA claim are irreconcilably inconsistent. Plaintiff has not succeeded in resolving this inconsistency. Plaintiff's response to Defendant's argu-

---

Social Security benefits that his disability prevents him from working (and that his disability commenced on his date of termination with Greiner). Plaintiff has offered no evidence opposing this.

8. Plaintiff may be claiming that he became disabled for Social Security purposes as soon

as his job with Greiner ended because, due to his physical condition, he would thereafter be unable to secure any other position. This argument does not succeed. For an analysis on this point, see our discussion *infra* regarding Plaintiff's inability to resolve the inconsistencies between the two claims.

ment for judicial estoppel is difficult to understand. Plaintiff responds that

> [i]n no way was Plaintiff's position irreconcilably inconsistent ... Prior to Defendant's decision to hurl Plaintiff like a piece of old worn-out jetsam, in the great sea of unemployment, Plaintiff had a job and was performing functions in that job. After he was jettisoned, he had no job and, given his physical limitations, would never again secure a job. Until the moment he was terminated on November 26, 1997, he was not disabled. As soon as he was terminated, he was disabled. On the same day he was both disabled and non-disabled. Thus, his position is not irreconcilably inconsistent ...

(Pls.' Mem. of Law in Opp. to Defs.' Mot. for Sum. Judg. at 7.)

It is unclear what Plaintiff is urging in this passage. Plaintiff's argument, wherein he claims that he became disabled on the very day of his termination, appears to be that he became disabled (for Social Security purposes) by virtue of his termination—that is, because, given his physical condition, he would be unable to find another job.[9] This argument fails. What Plaintiff's argument misses is that to apply for, and to receive, disability benefits, Plaintiff had to have shown that he was unable, due to his disability, to perform any work, *including* his old job. If Plaintiff's statement here can be read as suggesting that he would have been capable of performing his old job, then his representation to the SSA that he is unable to work appears to be less than honest. Nevertheless, what is certain is that Plaintiff cannot, without providing a sufficient explanation, now claim that he was qualified for the position where before the SSA he had to have represented that he was unable to do any work, including his former job. Plaintiff has not adequately explained this inconsistency.

b. *Second Element: Bad Faith*

▆ The Third Circuit has explained what must be shown in order to make out the bad faith element for judicial estoppel. In *Montrose Medical Group Participating Savings Plan v. Bulger,* 243 F.3d 773, 780–81 (3d Cir.2001), the Court stated that "[i]nconsistencies are not sanctionable unless a litigant has taken one or both positions in bad faith—i.e., with intent to play fast and loose with the court." (internal quotations and citations omitted).

> A finding of bad faith must be based on more than the existence of an inconsistency; indeed, a litigant has not acted in 'bad faith' for judicial estoppel purposes unless two requirements are met. First, he or she must have behaved in a manner that is somehow culpable. Second, a litigant may not be estopped unless he or she has engaged in culpable behavior *vis-a-vis* the court .... judicial estoppel is concerned with the relationship between litigants and the legal system, and not with the way that adversaries treat each other. Accordingly, judicial estoppel may not be employed unless a litigant's culpable conduct has assaulted the dignity or authority of the court.

*Montrose,* 243 F.3d at 781 (internal quotations and citations omitted).

The Court also held that "it does not constitute bad faith to assert contrary positions in different proceedings when the initial claim was never accepted or adopted by a court or agency." *Id.,* 243 at 782.[10]

---

**9.** We note that Defendant gives the same interpretation to Plaintiff's argument. As Defendant writes with respect to Plaintiff's argument, "[t]he Plaintiff further argues that he became disabled under the Social Security Act as a result of his inability to find other work after he was laid off." (Defs.' Reply to Pls.' Opp. to Defs.' Mot. for Sum. Judg. at 2.)

**10.** The court reasoned that "judicial estoppel addresses the incongruity of allowing a party to assert a position in one tribunal and the opposite in another tribunal. If the second

We find that the bad faith element is met here. *Montrose*'s requirements are satisfied. We think that Plaintiff's conduct is culpable—indeed, where he claimed in one forum that he was disabled and unable to work and in this forum that he was qualified for his previous work without explaining the apparent inconsistency, "[i]t is difficult to get around the conclusion that, in at least one of the fora, [Detz] was not completely honest." *Motley v. New Jersey State Police*, 196 F.3d 160, 166 (3d Cir. 1999). And, this culpable behavior was *vis-a-vis* the judicial system. The inconsistent positions have been offered to two tribunals in an effort to persuade each to adopt his arguments. Finally, Detz's initial claim was adopted by the SSA; he was awarded and is currently receiving disability benefits.

We note in addition that "[a]ny benefit or advantage sought or gained by inconsistent positions may be considered as evidence of bad faith." *Ricciardi v. Consolidated Rail Corp.*, No. CIV.A. 98–3420, 2000 WL 1456736, at *6 (E.D.Pa. Sept. 29, 2000). Here, it was to Plaintiff's advantage in the Social Security disability application to claim total disability in order to receive benefits. And it is now to his advantage to claim that he was qualified to perform his previous work, a statement that is inconsistent with his assertions in the Social Security application. Plaintiff has not sufficiently explained the inconsistency, and we find that at least one of these positions—each of which is to his benefit in the particular forum—was asserted in bad faith.

#### c. Third Element: Appropriateness of Judicial Estoppel as a Remedy

In order to employ judicial estoppel, a court must find that judicial estoppel is tailored to address the harm identified and must find that no lesser sanction would adequately remedy the damage done by the litigant's misconduct. In considering this element, we are cognizant of the fact that "judicial estoppel is an extraordinary remedy that should be employed only when a party's inconsistent behavior would otherwise result in a miscarriage of justice" and that "must be exercised with restraint and discretion." *Montrose*, 243 F.3d at 784.

We find that applying judicial estoppel is tailored to address Plaintiff's malfeasance and is the appropriate sanction. Indeed, judicial estoppel is the only remedy that we believe will remedy the wrong created by Plaintiff's taking two inconsistent positions. Moreover, granting summary judgment in Defendant's favor is appropriate. "Summary judgment is appropriate when operation of judicial estoppel renders a litigant unable to state a prima facie case." *Id.*, 243 F.3d at 779.

#### 5. Application of Judicial Estoppel By Another Court in Similar Case: Simon v. Satellite Glass Corp., 128 F.3d 68 (2d Cir.1997)

We note that at least one court has similarly decided that an age discrimination plaintiff who had applied for, and was receiving Social Security disability benefits, was judicially estopped from claiming under the ADEA that he was qualified to perform duties required for the position. In *Simon v. Safelite Glass Corp.*, 128 F.3d 68 (2d Cir.1997), the court reasoned that

---

tribunal adopted the party's inconsistent position, then at least one court has probably been misled. But if a party's initial position was never accepted by a court or agency, then it is difficult to see how a later change manifests an intent to play fast and loose *with the courts."* *Montrose*, 243 F.3d at 782 (internal quotations and citations omitted) (emphasis in original).

 

the plaintiff's statements under penalty of perjury to the SSA that he was "unable to work" were "patently ... contrary to his central claim in this [ADEA] case that he is able to work." The court concluded that because the assertions in the ADEA case and in the administrative proceeding could not be reconciled and because the plaintiff's claim of inability to work was not the product of mistake or inadvertence, judicial estoppel was appropriate.[11]

### C. *Conclusion*

Based on our consideration of the evidence in this case, we hold that Plaintiff is judicially estopped from asserting for purposes of his ADEA and PHRA[12] claims that he is qualified to perform his previous work. We find that judicial estoppel is an appropriate equitable remedy in this case. Accordingly, we grant summary judgment in Defendant's favor with respect to all of Plaintiff's claims.

An appropriate order follows.

### *ORDER*

AND NOW, this 15th day of August, 2002, upon consideration of Defendant's Motion for Summary Judgment, filed on July 16, 2002; Plaintiff's response thereto, filed on August 7, 2002; and Defendant's Reply to Plaintiff's Opposition to Defendant's Summary Judgment Motion, filed on August 9, 2002, it is hereby ORDERED that Defendant's Motion for Summary

Judgment is GRANTED. This case is CLOSED.

### *ORDER*

AND NOW, this 15th day of August, 2002, consistent with our Order of August 15, 2002, it is hereby ORDERED that **JUDGMENT IS ENTERED** in favor of Defendant Greiner Industries, Inc. and against Plaintiff Ralph D. Detz.

---

**11.** We note that a district court has raised the question of *Cleveland*'s effect on *Simon*. The court in *Nodelman v. Gruner & Jahr USA Publishing,* NO. 98 CIV. 1231(LMM), 2000 WL 502858, *11 (S.D.N.Y. April 26, 2000) noted that "the reasoning of *Cleveland* seems quite applicable here, and were the Second Circuit now faced with the issue, it might, in light of *Cleveland,* decide it differently." We reiterate the belief that there may be instances in which a plaintiff who has received Social Security benefits can proceed with an ADEA claim. Nevertheless, we do not think that *Cleveland* necessarily mandates the conclu-

sion that *Simon*'s outcome would be different today or that judicial estoppel is inappropriate in the present case. Indeed, as discussed *supra* at Section IV.B.4.a., there are differences between the ADA and the ADEA which suggest that *Cleveland*'s reasoning does not apply wholly to ADEA cases.

**12.** We reiterate that the analysis under the PHRA for age discrimination claims is the same as under the ADEA, its federal counterpart. Accordingly, judicial estoppel is likewise appropriate with respect to Plaintiff's PHRA claim.