Glenda GALIN, Plaintiff,

v.

**INTERNAL REVENUE SERVICE, and "John Doe" Defendants 1 through 10, Defendants.**

No. 3:07–CV–972 (PCD).

United States District Court, D. Connecticut.

May 1, 2008.

Alexander D. Pencu, Robinson & Cole, Stamford, CT, for Plaintiff.

John B. Hughes, U.S. Attorney's Office, New Haven, CT, Wendy J. Kisch, U.S. Department of Justice, Washington, DC, for Defendants.

### RULING ON MOTION TO DISMISS

PETER C. DORSEY, District Judge.

Glenda Galin brought this suit against the Internal Revenue Service (the "IRS") and John Doe Defendants 1 through 10, as officers, directors, and agents of the IRS, seeking: a declaratory judgment that she is, at a minimum, a 50% equitable joint owner of property in Southbury, Connecticut (the "Southbury Property"); a permanent injunction enjoining the IRS from auctioning the Southbury Property; and her costs and attorney's fees resulting from this action. After preliminary discussions between the parties, Galin withdrew her motion for a preliminary injunction of the sale of the Southbury Property, and on July 17, 2007, the IRS auctioned it off. The United States then filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that Galin is precluded by the doctrine of judicial estoppel from claiming a property interest in the Southbury Property. For the reasons stated below, the Government's Motion to Dismiss [Doc. No. 20] is **granted.**

### I. BACKGROUND

Plaintiff Glenda Galin is a seventy-three year old woman who was married to Dr. Miles Galin from 1953 until their divorce on June 7, 2007. (Compl.¶¶ 1, 2, 16.)

Throughout their decades-long marriage, Dr. Galin, an ophthalmological surgeon, provided the primary source of income for their family, and Mrs. Galin was a stay-at-home mother. (*Id.* at ¶¶ 9, 12.) Dr. Galin took responsibility for all of the family finances, including bills, tax, and real estate matters. (*Id.* at ¶ 9.) Mrs. Galin was not involved in any of the family's financial affairs, except for a personal checking account used for household expenses, and Dr. Galin had full authorization to sign all documents, including tax and real estate documents, on Mrs. Galin's behalf. (*Id.* at ¶¶ 9, 14.) Dr. Galin never informed Mrs. Galin about their business and financial matters, and he led her to believe that all property acquired during their marriage, including the Southbury Property purchased in 1991, was jointly owned by the couple. (*Id.* at ¶¶ 10, 11.) Mrs. Galin had spent a significant amount of time at the Southbury Property by herself and with family and friends, and she had always acted in accordance with her belief that she jointly owned the Southbury Property with her husband. (*Id.* at ¶¶ 19, 20.)

Unbeknownst to Mrs. Galin, during their marriage Dr. Galin habitually mishandled their finances, diverted marital property, and engaged in extensive criminal misconduct. Starting in the fall of 2000, Dr. Galin was convicted of multiple crimes in several states—wire fraud, transportation of counterfeit checks in interstate commerce, and uttering of counterfeit securities in federal court in California; fraud in New Jersey; and practicing medicine without a license in New York—and he ultimately served time in prison and in a halfway house. (Pl.'s Aff. ¶ 6.) During the course of Dr. Galin's criminal proceedings, Mrs. Galin learned that Dr. Galin was the sole owner of the real estate acquired during their marriage and that her name was not recorded on the titles of any of the properties, including the Southbury Prop-

erty. Upon these discoveries, Mrs. Galin entered into a verbal lease with Dr. Galin for the Southbury Property with an option to buy. (Compl. ¶ 21; Pl.'s Aff. ¶ 6.) (That lease has since been reduced to writing and was fully executed in March 2007 and duly recorded in May 2007. (Compl. ¶ 21.)) Left responsible for significant tax liabilities and debt incurred by Dr. Galin's financial misconduct, Mrs. Galin filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of New York in December 2003. (*Id.* at ¶ 16.)

In her bankruptcy petition, Mrs. Galin represented that she owned no real property, and she made no mention of the Southbury Property. (Pl.'s Aff. ¶ 12.) Mrs. Galin also reported on her petition that no creditors held secured claims against her, though the Government now asserts that the IRS had already filed notices of federal tax liens in Connecticut against all of Mrs. Galin's property and property rights. (Defs.' Mot. to Dismiss 3.) Mrs. Galin avers that she had been advised at the time of her bankruptcy proceeding that she had no legal interest or claim of ownership in any of Dr. Galin's real property. According to her affidavit submitted in opposition to the Government's motion to dismiss, Mrs. Galin states that she had been advised that New York and Connecticut are both "title" states, meaning that she had no interest in the Southbury Property because her verbal lease with Dr. Galin, which had not then been reduced to writing, was unenforceable pursuant to the Connecticut statute of frauds, Conn. Gen.Stat. § 42–2A–201(a)(2). (Pl.'s Aff. ¶¶ 12, 13.) Mrs. Galin was also advised that she may have a legal claim of ownership in the property through an equitable distribution claim upon divorce, or if she prevailed in a claim of fraud against Dr. Galin, but she was not ready in 2003 to

file for divorce. (*Id.* at ¶ 12.) However, she was not advised at the time of her bankruptcy filing that she might have equitable claims in the real property acquired during her marriage by virtue of its acquisition during marriage and by virtue of Dr. Galin's fraud in failing to record the property in both their names despite his representations to her to the contrary. (*Id.* at ¶ 14.) Not until she initiated divorce proceedings several years later did she learn that she could assert an equitable ownership interest in her marital property dating back to its purchase date. (*Id.* at ¶ 18.)

In June 2007, Mrs. Galin was granted a divorce from Dr. Galin in New York County Supreme Court. (Compl. ¶ 16.) In connection with the divorce action, Mrs. Galin filed a Notice of Lis Pendens, which was recorded by the Town Clerk of the Town of Southbury. (*Id.* at ¶ 24.) The divorce judgment granted Mrs. Galin no maintenance due to Dr. Galin's financial situation, but it awarded her ownership of the real and personal property acquired during the marriage but recorded in Dr. Galin's name, including the Southbury Property. (*Id.* at ¶ 17.)

Shortly after her divorce was finalized, Mrs. Galin filed suit in this Court against the IRS and John Doe Defendants 1 through 10, asserting that she has an equitable interest in the Southbury Property dating back to its purchase in 1991. (Compl. ¶¶ 2, 3, 22.) Mrs. Galin asserts her equitable interest in the property on the grounds of her long marriage to Dr. Galin; her good faith belief in his representation that the property was purchased jointly; and her award of all marital property resulting from her divorce action. In her Complaint, Mrs. Galin seeks a declaratory judgment that she was an equitable joint owner of the Southbury Property since its purchase, predating all IRS liens on it; an injunction prohibiting the IRS from auctioning the property or taking other steps inconsistent with her property interest; and an award of costs, expenses, and attorney's fees. (*Id.* at ¶ 29.) Upon discussion between the parties, Mrs. Galin withdrew her motion for an injunction and agreed to a sale of the Southbury Property. On July 17, 2007, the IRS seized and auctioned the Southbury Property to partially satisfy outstanding federal tax liens against Dr. Galin personally. (*Id.* at ¶ 18; Defs.' Mot. to Dismiss 2.) The Government has filed a motion to dismiss on the grounds that Mrs. Galin should be judicially estopped from asserting a property interest in the Southbury Property because she failed to disclose it during her 2003 bankruptcy proceedings.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, well-pleaded facts must be accepted as true and considered in the light most favorable to the Plaintiff. *Patane v. Clark,* 508 F.3d 106, 111–112 (2d Cir.2007). A court must limit its consideration of a motion to dismiss to "facts stated on the face of the complaint, [to] documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999) (citation omitted). If on a Rule 12(b)(6) motion "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d).

The conversion of a motion to dismiss to a motion for summary judgment

"is governed by principles of substance rather than form. The essential inquiry is whether the [opposing party] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *In re G. & A. Books, Inc.,* 770 F.2d 288, 295 (2d Cir.1985) (holding that the opposing party's submission of exhibits and affidavits constituted sufficient opportunity to meet facts outside the pleadings for conversion to a motion for summary judgment); *see also Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.2d 588, 592 (2d Cir.1993) (holding that the plaintiff was given sufficient opportunity to meet facts outside the pleadings given that they had submitted exhibits attached to their opposition to the motion to dismiss). Though a district court must ordinarily give notice to the parties before converting a motion to dismiss into a motion for summary judgment, a plaintiff invites the court to convert such a motion when she invites the district court to look at information, such as an affidavit, outside the pleadings. *Gurary v. Winehouse,* 190 F.3d 37, 43 (2d Cir.1999).

■ Galin has had sufficient opportunity to provide facts outside of her complaint in response to the United States's motion to dismiss: she filed an affidavit and exhibits in support of her request for a preliminary injunction, and she filed an additional affidavit with her opposition to the motion to dismiss. The Government has also had sufficient opportunity to meet facts outside the pleadings because it too attached exhibits to its motion to dismiss and had opportunity to respond to both of Galin's affidavits. In light of the affidavits and exhibits Galin filed outside the pleadings, she could have recognized the possibility that the motion to dismiss would be converted to a motion for summary judgment. *See Negron v. Weiss,* No. 06–CV–1288 (CBA), 2006 WL 2792769, at *2 (E.D.N.Y. Sept. 27, 2006).

A court should grant summary judgment if "there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "When a ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.,* 352 F.3d 775, 780 (2d Cir.2003) (*citing Anderson,* 477 U.S. at 255, 106 S.Ct. 2505).

## III. DISCUSSION

### a. Substitution of Parties

■ As a preliminary matter, the United States should be substituted for the IRS and the John Doe Defendants as the proper party in this action. Congress has not authorized federal court actions against the Department of the Treasury and the IRS. *See Blackmar v. Guerre,* 342 U.S. 512, 515, 72 S.Ct. 410, 96 L.Ed. 534 (1952) (holding that Congress must give express authorization for an agency to be sued in its own name); *Gavigan v. Comm'r,* No. 3:06–CV–942 (PCD), 2007 WL 1238651, at * 4 (D.Conn. April 27, 2007) ("The IRS itself is an improper party to this action because Congress has not authorized suits in federal courts against the Department of Treasury."). Galin herself concedes that "it is well settled that the IRS cannot be sued absent specific

statutory waiver." (Pl.'s Opp. at 8, n.2.) Pursuant to 26 U.S.C. § 7426(e), when a plaintiff improperly brings an action against an officer or employee of the United States which could have been brought against the United States, the court must "order, upon such terms as are just, that the pleadings be amended to substitute the United States as a party for such officer or employee as of the time such action was commenced upon proper service of process on the United States." 26 U.S.C. § 7426(e); *see also Gordon v. U.S. Treasury Dep't*, 322 F.Supp. 537, 539 (E.D.N.Y. 1970) (substituting the United States as a party where the action was improperly brought against the IRS). In its motion to dismiss, the Government states that it does not object to this case being considered against the United States. (Def.'s Mot. to Dismiss 1, n.1.) Accordingly, the United States shall be substituted for the IRS in this action.

Summary judgment must also be granted with respect to Defendants John Doe because Galin does not make any allegations against any of them in her Complaint. *See Akers v. United States*, 539 F.Supp. 831, 833 (D.Conn.1982), *aff'd*, 718 F.2d 1084 (2d Cir.1983) (dismissing an action against the IRS Commissioner for failure to state a claim because plaintiff had not made any allegations against the Commissioner). The only time the John Doe Defendants are mentioned in the Complaint is where they are named as parties (*see* Compl. ¶ 3), and Plaintiff limits her prayer for relief to Defendant IRS. (*Id.* at ¶ 7, wherefore clause.) Accordingly, summary judgment is granted to the John Doe Defendants 1 through 10.

### B. Judicial Estoppel

The Government argues that Galin should be judicially estopped from claiming an equitable interest in the Southbury Property because (1) she previously made an inconsistent statement in a judicial proceeding; (2) the position was accepted by a court; and (3) the inconsistent statements would cause detriment to the United States. As discussed above, in December 2003 Galin reported to the Bankruptcy Court in the Southern District of New York that she owned no real property and that no creditors held secured claims against her, despite the IRS's federal tax lien on the Southbury Property. The Government contends that recognizing Mrs. Galin's equitable interest in the Southbury Property now would prejudice the Government because, as a result of her prior inconsistent statement, the IRS discharged Mrs. Galin's tax liabilities pursuant to a stipulation entered during the bankruptcy proceeding and because the IRS had re-filed notices of the federal tax lien against the Southbury Property in 2007 against Dr. Galin alone.

Judicial estoppel requires that "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (*citing Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895)). The purpose of judicial estoppel is to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749, 121 S.Ct. 1808 (internal citations omitted). Though the circumstances in which a party should be judicially estopped are "not reducible to any general formulation of principle," *id.* at 750, 121 S.Ct. 1808, judicial estoppel is particularly ap-

propriate when a party does not disclose an asset to the bankruptcy court and then brings a claim in another court based upon the ownership of that asset. *See, e.g., Negron,* 2006 WL 2792769, at *4 ("In the bankruptcy context, 'the rationale for these [estoppel] decisions is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets.'" (*quoting Kunica v. St. Jean Fin., Inc.,* 233 B.R. 46, 58 (S.D.N.Y. 1999))); *Jethroe v. Omnova Solutions, Inc.,* 412 F.3d 598, 600 (5th Cir.2005).

▮ Judicial estoppel, however, is an equitable doctrine invoked by a court at its discretion. *Maine,* 532 U.S. at 750, 121 S.Ct. 1808 (citations omitted). The Second Circuit has consistently limited the application of judicial estoppel to "situations where a party both takes a position that is inconsistent with one taken in a prior proceeding, and has had that earlier position adopted by the tribunal to which it was advanced," *Uzdavines v. Weeks Marine, Inc.,* 418 F.3d 138, 148 (2d Cir.2005) (*quoting Stichting v. Schreiber,* 407 F.3d 34, 45 (2d Cir.2005)); *see also Rodal v. Anesthesia Group of Onondaga, P.C.,* 369 F.3d 113, 118 (2d Cir.2004); *Adler v. Pataki,* 185 F.3d 35, 41 n. 3 (2d Cir.1999), and to situations "where the risk of inconsistent results with its impact on judicial integrity is certain." *Simon v. Safelite Glass Corp.,* 128 F.3d 68, 72 (2d Cir.1997). It may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake. *Maine,* 532 U.S. at 753, 121 S.Ct. 1808. *See also Mitchell v. Washingtonville Cent. Sch. Dist.,* 190 F.3d 1, 6 n. 2 (2d Cir.1999)

("judicial estoppel does not apply when the first statement resulted from 'a good faith mistake or an unintentional error'" (*citing Simon,* 128 F.3d at 73)).

▮ In this case, Galin's position before this Court is clearly inconsistent with her position in her bankruptcy proceeding, and the Bankruptcy Court was persuaded of her prior position. Galin filed a voluntary bankruptcy petition in the Bankruptcy Court in December 2003 declaring under the penalty of perjury that she had no real property, despite the petition's clear instruction to list all real property, including equitable interests (*see* Def.'s Mot. to Dismiss, Ex. 2), and her affirmative obligations to disclose all property interests;[1] but now she seeks a judgment from this Court that she has at least a 50% equitable interest in the Southbury Property. After the IRS stipulated to a discharge of all of Mrs. Galin's tax liabilities, the Bankruptcy Court entered an order discharging her of her federal tax liabilities for the years 1987–89, 1991–93, and 1995. A bankruptcy court is considered to have adopted a party's assertion in a bankruptcy proceeding when it confirms a plan in which creditors release claims against the debtor. *Negron,* 2006 WL 2792769, at *3 (*citing Payless Wholesale Distrib. Inc. v. Alberto Culver, Inc.,* 989 F.2d 570, 571 (1st Cir.1993)). The Bankruptcy Court therefore accepted Galin's prior inconsistent position, entering its order upon the belief that she had no ownership interest in the Southbury Property.

▮ The parties dispute whether Galin's assertion of inconsistent positions con-

---

1. Bankruptcy petitioners have an affirmative obligation to disclose all assets to the bankruptcy court. *See* 11 U.S.C. § 541(a)(1) (defining the property of the bankruptcy estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case"); 11 U.S.C. § 521(a)(1) (defining the debtor's duties to disclose, *inter alia,* "a schedule of assets and liabilities"). *See also Negron,* 2006 WL 2792769, at *4 (finding debtors had an affirmative obligation to disclose their equitable property interest in a Chapter 7 bankruptcy proceeding).

cerning the Southbury Property would confer an unfair advantage on her, the third consideration for a Court applying the doctrine of judicial estoppel. *See Maine*, 532 U.S. at 751, 121 S.Ct. 1808. The Government argues that it was prejudiced by the Bankruptcy Court's acceptance of Galin's prior position because as a result it did not protect its lien interest on the Southbury Property. Despite the Government's having stipulated to the discharge of Mrs. Galin's personal liabilities, the federal tax liens would have remained on any property in which she had an interest at the time she filed the bankruptcy petition. The Government therefore detrimentally relied on Galin's prior position when it failed to preserve its federal lien rights and instead allowed the liens to self-release. (Def.'s Mot. to Dismiss 7–8.) Mrs. Galin, on the other hand, asserts that her failure to disclose the Southbury Property in her bankruptcy petition did not provide her with an unfair advantage because the Government would not have acted any differently had she disclosed her interest during the bankruptcy proceedings. Galin contends that had she done so, she would have been granted relief from liability for Dr. Galin's wrongdoing under the innocent spouse defense pursuant to 26 U.S.C. § 6013(e). (*See* Pl.'s Opp. 14–16.) She also contends that her tax liability for the relevant years, 1993 and 1995, was less than the proceeds of the sale of the Southbury Property. However, because the doctrine of judicial estoppel protects the integrity of the judicial system, not the litigants, judicial estoppel may be appropriate regardless of whether the opposing party will be prejudiced in its absence. *See Reciprocal Merch. Servs., Inc. v. All Adver. Assocs., Inc.*, 163 B.R. 689, 696 n. 11 (S.D.N.Y.1994) ("the defendant need not show prejudice"); *see also Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 360 (3d Cir.1996);

*Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir.2002). Accordingly, the Court will not engage in a hypothetical inquiry as to whether Mrs. Galin would have been liable for more taxes had she disclosed her Southbury Property interest to the Bankruptcy Court and whether her failure to do so prejudiced the Government.

■ Galin also argues that her failure to disclose the Southbury Property during her bankruptcy proceedings was a good faith mistake which precludes the application of judicial estoppel. Galin asserts that, at the time of the bankruptcy proceeding, she did not know nor was she advised that she had an interest in the Southbury Property; she only learned of her possible equitable interest in Dr. Galin's real property when she began her divorce proceedings years later. (Pl.'s Opp. 5–7, 11.) Viewing the facts in the light most favorable to the Plaintiff, the Court accepts that Mrs. Galin had no knowledge of her potential property interest and her bankruptcy attorney did not advise her of any such interest. The question is whether such good faith mistake precludes the application of the judicial estoppel doctrine in this instance. The Second Circuit has not yet decided whether the judicial estoppel is appropriate in a case involving a good faith failure to disclose assets in a bankruptcy proceeding, but a number of other circuit courts have been hostile to an inadvertence or good faith mistake exception to judicial estoppel. In the context of nondisclosure of pending claims to a bankruptcy court, several circuit courts have held that failure to fully disclose such claims will only be deemed inadvertent or due to mistake when either the debtor has no knowledge of the claims or no motive to conceal the claims. *Eastman v. Union Pacific R. Co.*, 493 F.3d 1151 (10th Cir.2007) (citing *In re Coastal*

*Plains, Inc.*, 179 F.3d 197, 210 (5th Cir. 1999)); *Barger v. City of Cartersville*, 348 F.3d 1289, 1294 (11th Cir.2003); *Payless*, 989 F.2d at 571. Courts have inferred the absence of mistake at the summary judgment stage when a debtor has knowledge of the claim and motive to conceal it. *See Burnes*, 291 F.3d at 1286 ("[S]everal circuits, in considering the particular issue of judicial estoppel and the omission of assets in a bankruptcy case, have concluded that deliberate or intentional manipulation can be inferred from the record."); *but see Ryan Operations*, 81 F.3d at 363–64 (holding that deliberate manipulation could not be inferred from a debtor's nondisclosure without further support in the record reflecting that the nondisclosure was intended to deceive the court).

As stated above, the Court, reading the record in the light most favorable to the nonmoving party, accepts Mrs. Galin's position that she had no knowledge of her ownership interest at the time of her bankruptcy proceeding because she had been advised that her verbal lease agreement with Dr. Galin was unenforceable. Unfortunately, this narrative, which is premised on Mrs. Galin's reliance on what turns out to have been unsound legal advice, cannot preclude the application of judicial estoppel. The law is clear that legal advice and ignorance of the law are not defenses to judicial estoppel. *Negron*, 2006 WL 2792769, at *5; *Cannon–Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir.2006) ("a debtor in bankruptcy is bound by her own representations, no matter why they were made.... The remedy for bad legal advice lies in malpractice litigation against the offending lawyer."); *In re Coastal Plains*, 179 F.3d 197, 212 (5th Cir.1999) (reliance on counsel's bad advice did not preclude judicial estoppel given the party's knowledge of the claim and motive to conceal it). The Court regrets coming to this conclusion and denying a remedy to Mrs. Galin

who, after being betrayed and bankrupted by her husband's misconduct, also appears to have been misled by ill-informed legal counsel. But as sympathetic a plaintiff as Mrs. Galin is, the law does not permit her to turn around and assert a claim to the Southbury Property after failing to disclose her ownership interest in her bankruptcy proceeding. *See Cannon–Stokes*, 453 F.3d at 448 ("All six appellate courts that have considered this question hold that a debtor in bankruptcy who denies owning an asset ... cannot realize that concealed asset after the bankruptcy ends."). Accordingly, she is judicially estopped from asserting her claim to the Southbury Property in this Court.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss [Doc. No. 20] is converted into a motion for summary judgment and is hereby **granted.** Judgment shall enter for the Defendants, and the Clerk shall close the case.

SO ORDERED.